Case 15-3016, et al., United States of America v. Fokker Services B.V. Appellant. Mr. Bonsai for the appellant, Mr. O'Callaghan for the appellant, and Mr. Unikowski for the anarchist. Please. Thank you, Your Honor, and may it please the Court, at Ditch Bonsai on behalf of the United States,  This case involves a district court's attempt to exceed statutory role under the Speedy Trial Act and intrude into discretion that's properly allocated to the prosecutor. This court has jurisdiction to correct the district court's legal error on one of two alternative grounds. Which do you think is the strongest? Well, Your Honor, we think that both are equally strong. No, that's not the answer to the question. Well, Your Honor, we think both are equally strong. Which is stronger? Your Honor, the first argument that the court must address is the collateral order doctrine. You're still not answering the question. Which is stronger? Your Honor, I suppose I would say the collateral order doctrine is stronger because that's the argument that the court would have to address first, and then mandamus is our fallback argument. I'm not sure that's a logical position. Yeah. Your Honor, we certainly think both arguments are strong. We think mandamus is a stronger argument, if that's the way you want to look at it. And that's because... I thought eventually you'd get to that point. No, that's because mandamus asks the court to consider... It has to be clear and unmistakable, doesn't it? It does have to be clear. How can you say it's clear and unmistakable if it's a novel issue? Well, Your Honor, the standard for whether an error is clear and undisputable is not whether the disrequisite action arose in a novel circumstance. So, for example, another... Would it make it difficult to call something undisputable when it does arise in a novel circumstance, though? Your Honor... I'm not saying it's impossible, but you have a pretty steep... No, you don't. You have a very steep hill to climb, don't you? Your Honor, that's certainly a factor that the court should consider. But the principle that we're asking the court to embrace is broader than the specific circumstances in which it arose. So we're asking the court to acknowledge that there's a zone for prosecutorial discretion under the Speedy Trial Act and that applies generally across a whole host of circumstances. But this statute expressly envisions a role for the court. You're saying it's prosecutorial discretion, but yet it has to be with the court's approval before you get the exemption from the Speedy Trial Act, exclusion, excuse me. That's true, Your Honor, the statute does... But how can you say it's within the prosecutor's discretion if it has to have judicial approval? Well, Your Honor, what we believe happened when Congress enacted Section 3161H2 is that it incorporated fundamental constitutional separation of powers principles that have been applied across a whole host of contexts. So, for example, under Rule 48... Wait a minute, you're avoiding the question. The statute specifically provides that the court must approve. And so what is the factors the court's supposed to take into account? I looked at your brief and all you said was that the court should consider whether or not the parties are evading the Speedy Trial Act. Well, they're always evading the Speedy Trial Act when they sign such an agreement. I don't understand. Well, Your Honor, the factors that the court should take into account derive from two different sources. The first, I would point the court to Judge Easterbrook's opinion in the Inouye United States case from 2007, in which he said prosecutorial discretion should be reviewed only to determine whether there's been a violation of the Constitution or some other source of positive law. So that's point number one. Point number two, to your point, we understand the evasion of the limits of the Speedy Trial Act prong to speak more of whether the parties are kicking the can down the road. What does that mean? Well, suppose they are. They are because... Go ahead, please. I mean, I guess I think what Judge Silverman's getting at, I think we're raising the same concern, is they necessarily are. Every time you ask for a court of approval in one of these situations, you're necessarily trying to evade, so to speak, the Speedy Trial Clock because you're trying to suspend the clock. So maybe one way to ask the question is, what's an example of a situation in which the court could disapprove based on evasion? One example would be if the record makes abundantly clear that the parties were entering into the agreement in order to restart a trial sometime down the road. And so if it was clear just based on the record or the evidence that was put before the court that the parties did not actually intend to enter into the agreement in order to allow the defendant to demonstrate its good conduct. And why? You're envisioning a situation in which both parties actually would collude to want to delay the trial date because what's the scenario in which that might arise? Well, Your Honor, certainly we don't believe that this is something that would happen very often, if at all. But it's not uncommon for Congress to put in fail-safes of this type of nature. So, for example, under Rule 48, the government may only dismiss an information or indictment with leave of the court. And that's a provision that has been interpreted in light of the government's historic role in prosecutorial discretion. And there are only certain limited circumstances in which a district court may deny a government, especially a joint motion, in order to dismiss an information or indictment. And so the same type of logic applies here. Certainly the district court's role is limited. It's an important but limited one. And so the fact that that scenario that I've posed would not arise very often, I don't think that's something that questions our argument. We're still trying to figure out what's the archetype of the situation that the court should disapprove. Well, give us an example again. So, Your Honor, it's the example that I gave to Judge Srinivasan just a few moments ago. I'm not sure I understood that example. Explain it to me. So if the two parties were to enter into an agreement where it was clear on the face of the agreement and based on the materials that are before the district court that the parties intended to restart litigation at some point in the future rather than enter into the agreement in order to allow the defendant to demonstrate its good conduct. In other words, if it was just for the convenience of the lawyers who were going on holiday. Correct. That's your stereotype. That's correct as to that part of the test for what the district court may review. Now, suppose in that situation you'd still have an agreement that hypothesizes certain conditions that the defendant would have to satisfy, right? So the court would be presented with an agreement that says the defendant has to do X, Y, and Z in order to benefit from this DPA. And then the court's looking at that and they're thinking, well, these are actually bona fide conditions. Your Honor, that's correct. And that's why we do believe that under this prong the court's review would be deferential and the court would assume that the prosecutors had acted regularly as the Supreme Court said, you know, Hartman v. Moore in like cases. Now, there is the other prong such as there is the other prong, the prong that arises from Judge Easterbrook's opinion in the United States, which is not a Speedy Trial Act case, but nevertheless it encapsulates some of the factors that courts have looked into in the review of prosecution. Well, so before we go to the other prong, which I take it is illegal for some other reason. Correct. On this one, so if the purpose is to make sure that under the words of the statute in your view, it's for the purpose of allowing the defendant to demonstrate his good conduct. So suppose the parties come together and say, here's my six conditions that the defendant has to meet, and then the district judge looks at it and says, I actually don't think those conditions suffice because it doesn't really show good behavior. I mean, those are really lenient conditions. I'm not saying that you have to bring different charges. I'm not saying that you have to actually pursue a prosecution to the full extent at all. I'm not saying that you need to pursue a particular sentence. I'm just talking about these particular conditions. And I think these conditions are just sort of anemic. So you need to go back to the drawing board and come up with something that, in fact, is designed to allow the defendant to demonstrate his good conduct because this only shows mediocre conduct. Is that something that you think is within the purview of the statute? Your Honor, I see that my time is up. Your Honor, so I think it would depend from case to case. So I hesitate to give you a broad rule that would encompass all such cases. But you think that at least it's possible that the court could do that? Be careful how you reject that, counsel. I don't see that as a hostile question. Are you sure he's not posing something that you want here? Your Honor, I think that it would be viewed through the lens of Hartman v. Moore and like cases. It would be viewed through the lens of a presumption of prosecutorial regularity. And so there wouldn't be the kind of intrusive review that the district court did here. Furthermore, I mean, the second point that I would just make is that there's no suggestion on the record, in this case, that anything of that nature, any inference of that nature was drawn. Rather, the district court rejected the deferred prosecution agreement on the ground that it was too lenient to the defendant. Well, there were at least some comments that related to the conditions. I think one of them had to do with independent monitoring. So that at least, you know, you can envision a scenario in which that was the only basis for rejecting. I understand that there were other things that were said. But if you have a comment that goes only to the sufficiency of a condition to show good behavior, that gets closer to the hypothetical that I was giving you. Your Honor, I suppose it gets closer. But on this record, with this opinion, I just – Do you understand that what we are trying to do is to divine a circumstance under which the statute would apply if it doesn't apply in the one before it? The hypothesis that the presiding judge suggests gives a situation in which it might apply. Are you really sure you want to be rejecting that? Shouldn't you be embracing that? No, that's correct, Your Honor. And so just to go back to what I said at the very beginning, there could be facts under which such a situation would arise. And so I'm not saying that there would be a per se rule that you could not make such an inference. However, I think on the record in this case, such an inference would not be permissible and was not, in fact, drawn by the district judge. So your answer to the presiding judge's question is, under his hypothetical, a district judge could refuse to approve. Yes or no? Your Honor, so – Yes or no? Yes, Your Honor. And if I may just elaborate a little bit. I'm envisioning a circumstance in which, you know, a one-page deferred prosecution agreement is filed with the court that just says we defer prosecution and perhaps lists one or two additional sentences such as we expect the district court – sorry, the defendant to show that he's a good person within the next 18 months. Conceivably, under those circumstances, there would be scope for district court review. But that's a very different case. I guess the question would be that there's some things that you could say are just outside the statute because the considerations that were taken into account by the district judge are just not ones that the statute envisions. You could also say that although these types of considerations are ones that the statute envisions, it's just an abuse of discretion in these circumstances to fail to give effect to the DPA. So if you thought the line was – I'm not saying it – I mean, you might think it's more restrictive than this, but if you thought that the line was between scrutiny of the conditions to show good behavior versus scrutiny about what charges might or might not have been brought, then you could say that, well, as long as it's about the conditions, it's within the statute. But there's going to be a very limited scope of review even as to those conditions, and anything beyond what some of the opinions you've cited in your briefing presupposes would forge into abuse of discretion territory. At least that's one possible way to look at it, I suppose. Your Honor, if I'm understanding you correctly, I think that's the way that we've articulated the test in this case. What we would like to say is that as an initial matter, it's legal error for the district court to determine that the terms and conditions in a deferred prosecution agreement are too lenient to the defendant, particularly when there's no showing that the – the deferred prosecution agreement was somehow intended to evade the limits of the Speedy Trial Act. But even if one were to assume that the district court had some sort of role in assessing the terms, I think that's what you were suggesting in your question, that even if they had some sort of role to address the terms of an agreement, the district court went well beyond that in this case by suggesting that the government should have prosecuted individual corporate officers, the government abused its prosecutorial discretion. Statements of that nature, that is something that's beyond what the district court could have done. And finally, you know, we would suggest that the district court went beyond the scope of the charges in this case for some of the reasons that we suggest in our reply brief, where the district court just made certain assumptions about the government's legal positions that are not reflected in the record. Thank you. Thank you, Your Honors. Good morning. May it please the Court, Edward O'Callaghan for FACA Services, B.V. Your Honors, to just take up the jurisdiction point that Your Honors were inquiring of government counsel, it is Mandamus jurisdiction that provides this court with the strongest jurisdiction to review the district court's order. If one looks at the standards from the recent Kelley, Brown, and Root case, the KBR case, Mandamus is appropriate where relief from the final judgment is not adequate. Here, that would be the case here. We did reiterate in Kelley, Brown, and Root that, Brandon, that it has to be unmistakable or undisputable or the clear and undisputable entitlement to the release of freight in the Mandamus. Yes. Is it here clear and indisputable that the judge could not take away from you the exclusion from the Speedy Trial Act? Yes, Your Honor, it is. And it's novel, but it's also clear and undisputable. And if you look at the language of the KBR case, they found in KBR that a legal error is clear and undisputable if it would have a broad and destabilizing effect in an important area of the law. And there's no question, Your Honor, here, that this ruling has such an effect on an important area of the law. Indeed, it goes to the heart of the separation of powers and the executive branch exercising its prosecutorial discretion. What about the argument that the case could come up to us ultimately if we did not take appellate jurisdiction now? Yes, Your Honor. There are serious and irreparable harm consequences for FOX Services if this interlocutory appeal is not granted now. And those are manyfold. First and foremost, there's a lot of discussion about the deferred prosecution agreement. But what there hasn't been is discussion is that there is a pending charge and information in the district court that was only filed as a part of FOX Services' reliance on the agreement with the United States government that it would have finality and certainty after an 18-month term with the firm. That information not only is filed, but as the record demonstrates, FOX Services has admitted to that information the facts and circumstances surrounding that information. And it has suffered reputational harm already. The only reason that FOX Services chose to do that, Your Honors, is because they had the finality and certainty of a DPA agreement with the United States government. Would it not have yet been approved by the court? Your Honor, the period of deferral had to be approved by the court. And that is looking at if there's any indicia of the party's motion before the court for exclusion of time under the Speedy Trial Act to see whether the DPA, the agreement that actually the court should rely upon to enter into order, deferring time, is illegal and unconstitutional. It's pursuant to written agreement with the defendant with the approval of the court. Correct, Your Honor. You read a lot more into the statute than is evident from just the words of the statute. Right. But if you look at the legislative history, I'm still trying to figure out why it's irreparable at this time. Okay, you've entered in, there's an information, you've admitted to it because of the DPA. Right. Okay, so we say we don't have jurisdiction now. What happens? So right now we go back, if you don't have jurisdiction, we go back to the district court, the information filed, the uncertainty of what happens with the DPA. Certainly, Parker Services continues to suffer harm while that information is pending. And, Your Honor, Wait a minute, suffer the harm? You're not going to, why is there going to be any increased harm? You've admitted to the information. You don't have to admit every day. We've lost the protection of the DPA. I'm still trying to figure out why you've lost the protection of the DPA. Okay, what risk do you now run? Because if the DPA is not in place and the Speedy Trial Act is not excluded, the government has to make the choice of going forward with the prosecution against Parker Services or some other choice. I'm not quite sure I follow because even under your view, there's at least some room for the district court to disapprove. There is room for the district court to disapprove? Yeah. Yeah. There has to be some room. I mean, the statute means something, so there must be some. Absolutely, Your Honor. So if that's true, then there's always the risk. Whenever you file, whenever you ask for a DPA, a defendant and the government go in together and ask for a DPA and there may be an information, there's always some risk that it may be disapproved. There is, Your Honor, but if you look at, one, the statutory text, I'm sorry, the legislative history and what authority is actually given to the district court in this circumstance, it's actually to review the party's agreement, what the agreement is. It doesn't spell out what agreement, but the agreement is to divert. I get that, but I guess what I'm saying is you're making it sound like there's a difference in kind when it seems like it's a difference in degree. We're talking about degrees of risk. Of course, you enter into an information that admits certain things, but there's always some risk that the court is not going to approve of the deal. And then you've already done that. I'm sorry, Judge. It actually has never happened before, and that's part of the calculation that the company makes and other companies make. I'm still trying to figure out to follow through on your. Okay. So the result is the district judge has declined to approve it. So now you've, are you saying you now face an increased risk of prosecution? Your Honor, the defense of that prosecution has become incredibly more difficult. Why? Because the party, the process. Why isn't the government stopped from prosecuting at this point? Does it agree that they have a private agreement with you? We would certainly accept that, Your Honor, but one of the options would be for them to proceed with the prosecution with a factual statement that essentially admits the information charges. And the reason why. Isn't that an illusion after the government has agreed? I don't see why that's a real risk. Okay, Your Honor. As counsel for the company, I just, and looking at the possibilities and trying a case to defend when I have a factual statement that's in the record of the things that the company admitted to, I see that as a risk. Suppose the government said, Well, in light of the appellate court concluding it doesn't have jurisdiction at this time, we're going to let the Speedy Trial Act, we're going to let the time expire, and the district judge would dismiss, and then we'll appeal at that point. Yes, Your Honor. Then you have zero risk, right? No, I think there is still risk on that. What's the risk? One of the risks is actually if the government still would have to move to dismiss the information, the Speedy Trial Act would run, they'd have to actually make a motion. Or you could make the motion. I can make the motion, exactly, Your Honor. But that's not the agreement that the parties reached. The parties reached the agreement that the information would be dismissed after an 18-month period. We understand that. We're not talking about what the risks are generated from the judge not approving that agreement. Yeah, but, Your Honor, it is, I respectfully disagree, it is a risk that exists for the company if that information You mean the government could change its mind and then decide to prosecute you? Exactly, Your Honor. That is an option. The second piece of the harm I do want to hit on just quickly is that You might have a new Attorney General who would conclude that fines against corporations are inadequate, you have to prosecute individuals. You could have that hypothetical. You could have that hypothetical or prosecutions against corporate defendants as well, Your Honor. That's what I meant, yeah. Right. Just one point on the duration, the 18-month term. That is a key facet of the agreement between the parties and certainly for the company. And so that goes also to the point of the necessity for an interlocutory appeal. The 18-month term of the deferral period was a key consideration for the company because it gave it the finality. That interlocutory appeal argument is a bit frightening in the breadth of precedent. The general precedent is that even a claim of immunity is not subject to interlocutory appeal unless it's based on a double jeopardy or an absolute immunity. So if we were to hold that this can be brought by interlocutory appeal, are we opening ourselves up to claims of interlocutory review for all sorts of other quasi-merits defenses that are based on time or something similar? I don't believe you are, Your Honor, because of the... Well, suppose you're representing a police officer who's charged with a 1983 violation. He says, well, are we sued in a 1983 case? Just to be civil. But anyhow, the claim is, well, I have immunity as a public official. And district judges say, well, no, it doesn't apply because ABC. Can they bring that up to us immediately? I don't think they could, Your Honor. I don't think they can either. And I don't see why they can't and you can't. Your Honor, the circumstances of this case present the correct justification for an interlocutory appeal. I believe it's under the mandamus jurisdiction but also under the collateral order jurisdiction, the collateral order jurisdiction under 28 U.S.C. 1291. The standards are met as in the Cohen and the Midland cases, and particularly here with Midland, Your Honor, which focused on the right of the parties in the agreement being eviscerated by an order in the district court. And that is our fundamental argument, that the contractual right of FSBV was eviscerated by the court's order because it had a right to expect that the deferred prosecution period would be... It's not clear to me whether this issue is removed from the merits. I'm a little confused about that. What are you talking about is the merits? The merits is the prosecution? The merits of the prosecution are actually a factual statement that's already been admitted to. And so the merits of the case... You want to say... I'm not sure this issue is distinguished from the merits. This issue is the merits, isn't it? It's not the merits, Your Honor. The merits of the case are the information, not the deferred prosecution. Anyway, I agree with your proposition. The better case is mandamus. Mandamus is going to be better. And I appreciate your candor. Thank you, Judge. I'm way over. I just want to make one point on the reassignment point to a different district court judge. Your Honor, we don't make this motion lightly. However, in this circumstance, and particularly given the representation of the government council, both in its briefing and here today, that the district court judge amplified the charges and amplified the case against FACA services in its deliberation in the very brief, frankly... What is your risk? What is your risk? What is your risk if you prevail here? What's left to do? Yeah, that's what I... We're both on the same wicket. That's right. We have to go back to the district court, who I would assume would enter whatever order this court directs it to. However, we still need to get that information dismissed. And a motion to dismiss the information has to be brought. Now, clearly, that's in prosecutorial discretion. That's easy to get around. Well, Your Honor, I would normally say that. Jake says go to trial, and the U.S. Attorney stands up and says we rest. Maybe it has happened. That's exactly right. But, however, given the record that we have here and the standard, again, from the Microsoft case, where there's an appearance of bias from the district court... Well, that's an extreme stretch of an analogy there. In the Microsoft case, actually, which I wrote, the problem was the district judge relied on material outside the record to show bias. We don't have anything like that here. Your Honor, from my reading of the Microsoft case, there's a lot more than that. That was a key factor. There was no evidence in this record of the district court relying on anything from outside the record for it. That's right. However, he did interject into this record material from outside. Actually, he did that to question the representations of government counsel without any basis that there was a voluntary self-disclosure made in this case, and ordered the government counsel to do a sweeping three-and-a-half-month-long investigation of something that they had already investigated and concluded after four years of investigation, and that's whether this was a voluntary self-disclosure. There's no basis for the district court to do that, other than the fact that the district court had already reached the conclusion that there were problems with this DPA and he wasn't going to approve it. And we just think the appearance of bias from the record, which admittedly is a very short record, but I think that increases the stark references that the district court made justifies reassignment on DMA. Thank you, Your Honors. Thanks. May it please the Court. This Court lacks jurisdiction over the interlocutory appeals, and the parties have not demonstrated a clear and undisputable error that would warrant mandamus relief in this case. So, in view of the Court's comments that it believes mandamus is the more likely source of relief, I'll begin there. I don't think it's possible to look at the statute and look at the district court's decision and say that there's a clear and undisputable error. The parties contend that there's a categorical bar on the district court's consideration of whether DPA is too lenient, but that categorical bar does not appear anywhere in the statute, which merely talks about judicial approval. Suppose the district court in this case has said, I disapprove the DPA because I know this company, I've been reading about it, and they should get all hell released upon them. Yes, I think that would be an abuse of discretion and warrant mandamus relief. Why is that different? Well, I don't think the Court is permitted to just rely on his understanding outside the record. No, no, he said on the record. He said on the record, this is just a horrible company. This is just awful. And I won't approve anything unless everybody goes to jail. Well, first, I think that might be a reversible error because I think the Court has an obligation to give a clear and reasoned explanation for what he's doing. And so I simply think that looking at it and saying, you know, that's it, I'm just going to say no without giving a coherent explanation considering all the factors, that probably would be an abuse of discretion, counter to basic judicial norms. What would allow jurisdiction? What would allow jurisdiction in the appellate court? I don't think that there would be jurisdiction in the collateral order doctrine. No, on mandamus. Yes, potentially, because I think it's clear and indisputable that a district court has to at least exercise discretion rationally and consider the facts. So if the district judge is irrational, arbitrary and capricious, there would be appellate jurisdiction. I think that there would be mandamus jurisdiction. Yes, mandamus jurisdiction. Yes, I think it's clear and indisputable that a district court that acts irrationally, that just looks and – Just unreasonably. Well, I think it would have to be an extraordinary – Unreasonably is arbitrary and capricious. I think it would have to be sort of unreasonably unreasonable because I think – Unreasonably unreasonable. I mean, you know, there's sort of a double deference standard here because we think that the ordinary standard of review here is abuse of discretion, right? We think that even if there was jurisdiction under the collateral order doctrine, there would be – Well, the standard of review here is the one you've already been stating, the clear and unmistakable. Right, that is true. Indisputable, excuse me. But, you know, even sort of the baseline rule, even if there was appellate jurisdiction, there would be a certain degree of deference. It would be abuse of discretion to review. So I think it would have to be clear and undisputable that the district court abused its discretion, which is an extraordinarily deferential standard. Are you aware of any other case in the past in which a district court has denied a deferred prosecution agreement based on leniency considerations, not about the conditions to show good behavior, but leniency considerations to the effect that the government should have brought more serious charges against particular entities, and this is too lenient in that sense? I'm not aware, Your Honor. DPAs are actually pretty uncommon. I think that, you know, there's something like 100 brought during, like, a 20-year stretch, sometimes we get the exact statistics. We quote them in the brief. They're a little bit more common now, but these issues haven't reached the appellate courts at all. The parties are relying on a couple of unpublished district court opinions on some unclear records. So this is just an unusual circumstance either way. So it's not like the parties could have relied on a large flood of decisions, rubber-stamping DPAs, and suddenly the district court said, no, I think this is sort of a new issue that hasn't really arisen before. This is a small matter of semantics, but it may not try to be too small. You are using the terminology the district court is barred from considering. Rather than that, isn't the question whether the district court is empowered to consider? Well, if the statute empowers the district judge to do something with the approval of the court, the court can only do whatever that statute empowers it to do. Rather than saying, well, the court has power and something bars it, we have to look to the statute and see what it has the power to do. I understand that's semantics, but it could be important. I take Your Honor's point, but I think that when you read the statute, it does say judicial approval, and it doesn't really specify specific criteria in exercising that approval. Very plainly, it would not open the entire world to the district judge to use as grounds for approving the agreement. So the authority granted to the judge is limited in some fashion. Why should we construe the authority as being as broad as you want it to be? That is to say that he can do it based on the apparent leniency of the charges against the defendant. Well, I think that there are many statutes out there that confer discretion on a district court without specifying the specific criteria. But we're looking at one here. Yes, and I think that the ordinary standard review is that the judge has to act rationally and consider the relevant factors. If the judge said, you know, I don't grant deferred prosecutor's agreements on Thursdays or something, that would be completely irrational. It's true the statute doesn't bar him from doing that, but the court has to exercise discretionary decision-making in a rational way. But I think that there's a norm in the justice system that judges may consider the public interest, especially in criminal prosecutions and criminal sentences. You can't consider the public interest in just everything. There are some areas in which you can consider the public interest. There are others in which your consideration is limited. I don't know which one this is. Well, two points about that. First of all, if this is a mandamus case, I don't see how you can say that clearly and indisputably the district court was barred from doing that. That's a good answer. Not barred from, but wasn't empowered. Right, wasn't empowered. I mean, if the statute doesn't specify, especially in the context of the criminal justice system, judges do consider leniency in other contexts. We raised the example of plea bargains with sentence bargains and charge bargains. It is certainly the case that this isn't a plea case. We understand that here the district judge was denying a motion to exclude the time and not accepting a plea. It's a different kind of judicial act, but it's still a judicial act. The judge is still doing something. Could a judge say this is a scenario in which a prosecution has to be brought? I'm not going to authorize, I'm not going to approve a deferred prosecution agreement at all because it's in the public interest for this defendant to be tried and convicted. I think that's a difficult question, which, of course, is not presented here. The district judge did say that he would look at it. But do you think that's within the statute? I think that that's a close case. I probably think that would be an abuse of discretion, maybe not on mandamus, but on view of a final judgment because I think that the statute does seem to contemplate some room for the parties to agree to a DPA, and for the district judge to just say absolutely not, no DPA. But that's just, I don't understand what's black and white about no DPA as opposed to a DPA with really, really, really strict conditions, or, boy, you have to do a lot more than this because this defendant is really a bad actor. And, boy, I would have loved to have seen some really serious charges with a lot of prison time potentially associated with it. Well, I mean, I know the court usually hates this answer, but it would depend on the specific facts of the case. I think that ordinarily a district judge is saying, you know, I don't like DPAs. I think they're a bad idea. I want to see more prosecutions and, therefore, no. No, so I agree with you. I don't mean to suggest a situation in which it's a blanket denial of DPAs because the judge is hostile to DPAs. I'm saying that in this case, I'm looking at the particulars of this case, no DPA. Charges have to be brought. It's in the public interest for the public to vindicate its, you know, felt need to exact the interest of sentencing against this particular actor. Yeah. I think that might potentially, under appropriate facts, not be the case. Well, why is that any different in this case? Well, I'm agreeing with Your Honor. I think that in the appropriate case, I think that's the case. No, no, that's this case. Well, no, I think Judge Leon specifically said that he was willing to look at a different DPA with different conditions. I suspect that if the parties came back to him and said, you know, there's going to be an independent monitor, there's going to be a fine exceeding the revenues earned, the district court probably would look at it differently. So it's not clear to me that this case. So you think the statutory language that says with the approval of the court means that the court can just say disapproval of a DPAs, period, in this case? Yes, I do think so, Your Honor. I think that in an extreme case, if there's a capital murder charge and there's a DPA in which the person is not even going to be prosecuted at all and not going to be convicted, I think the court could say, look, the prosecutor has discretion whether to bring charges or not, but I'm not going to approve exclusion of time and let this case stay on my docket for 18 months if the charges are going to be dropped. Why would we think that Congress wanted to give the district judge the authority to require the prosecution to bring a charge? I don't think that it's requiring the prosecution to bring a charge at all. The prosecutor can still drop a charge. I think that what it's saying is that I'm not going to allow my docket to be used as leverage for a resolution of the case that's so clearly outside of the public interest. It's not that the prosecutor has to then proceed with trial. The prosecutor can drop the charges. All the judge is saying is you want me to use my docket for 18 months as leverage over this defendant, and that particular exercise of the judicial power that you're asking me to exercise, I'm going to say no. And I don't think that that's very different. You're basing that on a consideration that the treatment of this defendant is too lenient. Is that correct? Is it not? Yes, Your Honor. Well, isn't the consideration of leniency normally within the leniency in charging or in prosecution normally within the executive authority of the United States rather than within the judicial authority? I don't think it's true in the decision whether to bring charges at all, yes, but certainly in the context of plea agreements where there is an agreement between the government and the defendant, no, the court has a role. Yes, a C agreement is possible, but, of course, that is very strictly spelled out. No, but even in an 11C1A agreement, the district judge, even in a charge bargain, the district court has the authority to look at whether the charge bargain is too lenient. In fact, there's a policy statement I have here from the guidelines, 6B1.2, that says that a district court must look at charge bargains and make sure and determine whether they're too lenient in the public interest. And so I think the district judge is in the plea context. In the charge bargain, doesn't the district court necessarily have a role? Yes, Your Honor, it does. What's the role? The role is to look at, among other things. No, but ultimately, what is the district judge's role? What does the district judge have to do? Accepts the plea bargain. And do what? And ultimately it imposes a sentence. Right. So there's no question the district judge has that role. Yes, Your Honor. It's true. Which goes to the alleged leniency. Yes, Your Honor. But even in the context of accepting the charge bargain prior to imposing the sentence, the judge has to determine whether even the charge bargain is too lenient. And the judge does have a role. But that's inherent in the sentencing role. I agree, Your Honor. And it's true that there's no sentence here. It's a different kind of judicial act. But it's still a judicial act. And so I don't understand the separation of powers problem with the judge exercising his judicial power under Article III to consider whether this is too lenient in an appropriately extreme case. Congress granted discretion to the judge under this particular statute to look at the DPA. And, in fact, the Speedy Trial Act directs judges to consider the public interest in deciding whether The public interest, of course, is in even if the parties agree to suspend, defer prosecution to avoid the speedy trial, Now, the public has an interest in speedy trials, too, as well as the defendant. So that's why Congress puts that in, right? And the judge has a role in determining whether the parties are evading the interest in a prompt trial for frivolous reasons, for the convenience of counsel's holidays. I don't see how this statute can be construed as incorporating only that judicial role. I mean, one point is that there's a judicial approval requirement. And the government said, well, the purpose of that is to make sure the parties aren't just using the DPA as a pretext for continuance to evade the Speedy Trial Act. But that is almost inconceivable that would happen because the DPA is binding. I mean, if the defendant lives up to it, then the charges are dropped. So if the government lawyer said, you know, I'm going on vacation for a few weeks and I want the trial to be delayed, you couldn't do that with the DPA. Or also, there's also the hypothetical that the DPA is almost sketchy, has nothing to do with the defendant showing cooperation. Well, first of all, I think that arguably, in the facts of this case, there's at least, as Your Honor stated during the opening presentations, indications of that from the district court's comments. The comments about the independent monitor shows that the court was concerned that there was insufficient concern of actual compliance. So I do think that if the court concludes there's an abuse of discretion here and a clear and indisputable error, the court should remand it to the district court to consider under whatever legal standard that the court considers. But second of all, even setting that point aside, I don't really see the basis in the statute of just limiting the district court's authority so narrowly. Again, it says that the court can exclude time if there's a prosecution deferred for the purposes of assessing the defendant's good conduct with the approval of the court. And I don't think that the approval of the court by statute is limited considering that purpose. I don't think that it contains any statutory limitation. And so I think that just like the Rule 11 context, ultimately it boils down to whether the district judge rationally explained his reasoning and rationally exercises discretion and considerations of the public interest, including leniency I think are part of that just like they're part of the Rule 11 context. And I certainly don't think that there's a clear and undisputable authority to show that the district court was not categorically not empowered to consider that consideration in deciding whether to approve it. Do you have anything to say about counsel's articulation of the reasons why, if the mandamus is disapproved, that there's something short of chaos created? I don't think there's chaos. Something short of chaos. But the argument was there's increased risk of all kinds. Well, first of all, counsel said that he was concerned because there's this information hanging over FSPP's head. That's true in every single criminal case. In fact, routinely criminal defendants want to file interlocutory appeals of motions to dismiss indictments because they might have to spend years in prison if they're convicted until the court hears the appeal. But the court doesn't allow interlocutory appeals in that case. It seems to me that what FSPP is encountering here is significantly less than that. And so, I mean, I think that the parties can let go. What about the risk that the government would now prosecute? Well, that risk does exist. But if FSPP is right that the court should have accepted the DPA, then it can appeal from a final judgment of conviction. Oh, great. And then if the court pulls that the district court erred, it can go back and direct the district court to accept on remand. And that's what happens in plea context, actually. This court has exercised jurisdiction in a number of cases where the court rejects a plea agreement, and then there's a trial, the defendant's convicted, and the court of appeals says… So, basically, your argument is the district judge in these kind of cases has as much discretion as a district judge would have in entertaining a plea agreement. That's basically your argument. I do think so. But even if the court disagrees with me and thinks there's less discretion, I don't think there's any room for a categorical rule that considerations of leniency are completely barred. And I think that for the reasons that are explained in the briefs, if there's any case in which a district court rationally exercises discretion to conclude that DPA is too lenient, it's this one. The facts of this case are absolutely egregious. There's over 1,000 sales to Iran, and that's clearly by the law. And I don't think that the district court appropriately recognizes that. Not anymore. Well, I do read the news like Your Honor does, but I don't think that there's any retroactive change in the laws. No, I'm changing. Anyone disputes that these are serious criminal conduct. So, the panel has no further questions. I ask the court to dismiss the appeals and deny the written mandates. Thank you. Mr. Bronstein, we'll give you two minutes. Thank you very much, Your Honor. Thank you, Your Honor. I'd like to make two quick points on rebuttal. The first point goes to the clear and indisputable prong of the mandamus test. The key point here is that there's a broader principle about prosecutorial discretion that applies in a number of different contexts, including this Court's opinion in Microsoft, the in re United States opinions from the Seventh Circuit, in which the court granted mandamus, and none of those could have, no writ could have issued in those cases if the court had focused more narrowly on the precise circumstances in which a case had arisen. The second point on this clear and indisputable prong is the approval of the court language. Just a few thoughts on that. The first is that there are no factors for the court to consider as to what would go into assessing a DPA for excessive leniency. It's highly unlikely that Congress would have intended this type of intrusive review for leniency without spelling out factors for a court to consider. Highly unlikely is not the same as clear and indisputable. Well, it is clear and indisputable when you compare the language here with the language in Rule 48, which says that the government can obtain dismissal with leave of the court. And in those instances, the court doesn't conduct some sort of leniency review before determining that the government can dismiss. Do you think there's a big distinction between approval and accept or reject? I'm not sure that there is such a big difference. Because that's the language of, I think, Rule 11, right, for please? That is the language for Rule 11. And so the point that I'm making, though, is that with respect to the approval language, to the extent there is any concern about the court, it's somewhat ambiguous. Because this Court has clear precedent in the Swift and Massachusetts School of Law cases in which the court says that the presumption is that Congress did not intend to invade a zone of prosecutorial discretion rather than the opposite. I see that my time is about to expire, but before it does, I'd just like to say, is there any other way the court case could come before us? The way that the amicus is suggested here is that the government could wait for the speedy trial clock to run and appeal from the court's dismissal of an act from some point down the line. And there's just simply no case that requires the government to go through that type of procedure. Cases that the amicus cites at this point, Kerrigan and Samueli, they arise in very different circumstances. Are you talking now about your mandamus or your interlocutory read? Well, this would go to mandamus, Your Honor. It would go to both, perhaps. It would go to both. If we hold what you want on that, are we opening the door for interlocutory review every time a district court refuses exclusion in a speedy trial for any reason? I don't think so, Your Honor. Why would it not stand on the same footing, at least with respect to interlocutory review, so far as being whether or not that's a separate issue from the merits and whether it's effectively reviewable after merits? Well, Your Honor, so to take the… Why aren't we opening the door to everybody that wants to have a speedy trial fact if they can interlocutorily review this one? Your Honor, so I don't think the court has to take mandamus… Never mind what you think the court has to do. Tell me why that wouldn't be precedent for anybody that wanted to do it. With respect to mandamus, the issue… Let's go to interlocutory review first. With respect to interlocutory review, one of the prongs of the test is whether the court below has resolved an important question that's separate from merits. Right, and the important question has to do with the speedy trial act. Well, the important question that is at stake over here is whether a district court can review the terms of the DPA for… In the context of whether or not to allow, whether to allow exclusion for the speedy trial act. That's true, Your Honor. If it weren't for the speedy trial act, we wouldn't have this issue. The important issue here has to do with an exclusion of the speedy trial act. That's true, Your Honor, but I believe that… So why wouldn't we be opening the… allowing a precedent that would open the door to everybody that had a speedy trial fact that wanted an interlocutory review? So the answer is that the Supreme Court has said that the legal issue has to be posed at the right level of generality and has to be important, and the legal issue that we've presented to the court at the right level of generality is whether the district court can review for excessive leniency, and we submit that's important. In the context of the speedy trial. Correct, but that would not necessarily extend to other disputes under the speedy trial act which relate to other issues. They might not be important when expressed at the right level of generality. I mean, even under that, I take the point, but even under that approach, it's a little bit artificial, I think, to define the category, or at least arguably artificial, to define the category as one that will allow an appeal in this case, but then in the next case that comes down the pike where a district judge exercises the approval authority to say that, well, that last decision already decided the general question, and so here we're only dealing with a particular question and there is no interlocutory review because it's still the same category, which is to say the exercise of approval or disapproval authority under the statute. Well, Your Honor, I think ultimately it does come down to the importance of the question as posed at the right level of generality, and we're submitting the question that's presented here is an important one. But to the extent that the Court disagrees with us on the collateral order doctrine, there is mandamus review, and mandamus review is the type of relief that can be issued for a particular case to resolve a particular problem. And so, for example, in the Cal Brown and Root case, that case arose in a discovery dispute context, but the Court didn't suggest by taking the mandamus review. It had to do with the disclosure of breach of immunity of a client attorney conference information. And if you want to release that information, the harm is done. You can't cram it back into the privilege. The claim was whether this privilege had been waived already. So it came up on a very discreet question of whether you can force disclosure of attorney-client information and then come back and get it some other time. You can't do it. There's really no parallel in the KBR case than this one is. Well, Your Honor, I agree that it arose in different circumstances with respect to a discovery dispute. I was citing it for the proposition that by exercising mandamus jurisdiction in that case, the Court was not suggesting that every discovery dispute would. I don't really see any way in which KBR has anything to do with this. Well, Your Honor. We know that there are some cases in which mandamus will lie and some which will not lie. KBR, it did lie, but KBR has nothing in common with this case. Well, Your Honor, if I may make one last point with respect to KBR. One issue here goes to the adequacy of the alternative avenues for relief that the government might have. And that's where I started on this. That had to do with the release, their compelled release of attorney-client communication. So once that's done, it obviously can't be remedied. You've already breached the privilege at that point. The information has been spread abroad. This one does not have anything comparable to that, does it? Well, Your Honor, if you look at KBR, one of the points that it makes. I looked at KBR, remember, from this vantage point. I'm sorry, Your Honor. That was verbal filler. The KBR decision on this point does point out at one point that, you know, one alternative that could be considered was whether the party would have to defy the court's ruling and then enter into contempt and take an appeal from that. And the court said that that was not an adequate means for relief under the circumstances there. And we submit, although it's certainly a different set of circumstances, we submit that the alternative that amicus has proposed here, which is that the government wait and have its meritorious claim against a concededly culpable defendant dismissed before an appeal is taken from the order here, that that similarly does not make sense. So that's if it dismisses with prejudice. And I guess one just procedural question I have is, and I don't know what the practice is in the district courts, but is it possible to get some indication from the court whether the dismissal that would be entered would be with prejudice? Your Honor, I think in either case we would have the same argument, which is that it wouldn't make sense to force the government to go through that procedure in order to take an appeal to this court. But with respect to whether it would be with or without prejudice, I'm afraid that I can't answer that. I don't know what the district court would do. Could you change your mind if the district judge's order remained? Could you change your mind and prosecute legally? Your Honor, that is an issue that I don't think that I'm prepared to answer today, and I think it would depend. I'm asking whether you have legal authority. Why are you not prepared to answer the question whether you have legal authority to change your mind at that point and prosecute? Well, Your Honor, I think it would depend on a variety of factors that might happen in the future. Counsel, I'm not asking you whether you would do it. I'm asking you whether you have legal authority. Whether we have legal authority to do it. Certainly we would have legal authority. To change your mind and prosecute. If, for example, the company did not pay, the company has yet to pay the amount. No, no, I'm asking if the district judge's order remained. Yes, Your Honor. And the speedy trial term expired. Could you change your mind and prosecute? Well, Your Honor, the reason why I'm hesitating to answer your question. I'd love to know. Is because there's a question about whether the deferred prosecution agreement went into effect as a result of the district court's rejection of the motion to exclude time. And if, in fact, it did go into effect at that point, then we would be able to. If it did go into effect. Yes, correct. Hypothetically, if it went into effect, we would be, the argument would be. You would be stopped. Unless there was a breach by the other parties. In other words, but that's not clear. So it may be that you would have authority to prosecute. That's correct. I see. Thank you. Thanks to all counsel. Mr. Unicasky, you and your firm took on this responsibility at the request of the court as an amicus. Do you want to give the other? Oh, I'm sorry. Just briefly. Yeah, sure. One minute. Sorry. Thank you. Thank you. One minute. I'm new at this. Yes, everyone and I have about a century of experience. I want to take a shot at addressing Judge Sentel's point about interlocutory appeals for all speedy trial act exclusions. I do not believe that if interlocutory appeal is granted here, that it opens up the courts to interlocutory appeals for all speedy trial act exclusions. And that's because if you look at the subsections, really there are only two. Of all of the subsections that allow for speedy trial act exclusions, I contemplate any type of findings by the district court. Now we know it's 3161H2, and then there's the catch-all 3161H7, which is in the interest of justice, which necessarily requires district court findings. And so I think for that reason we're not opening it up. Well, would any interlocutory appeals under those two subsections then always be available? I think for H2. For H7, I think there wouldn't be a justification for an interlocutory appeal because there's specifically a justification for district court findings there. And I think it would be hard-pressed for. I mean, they could lead to a different sort of error. Yes, Your Honor. But not for all the speedy trial act exclusions. And then finally, I just wanted to say, for record, we request that this court reverse the district court order and reamend with instructions to grant the joint motion for speedy trial and to reassign to a different district court judge. Thank you, Your Honor. Thank you. Thank you to all counsel. Now let me say, Mr. Unikowsky, we greatly appreciate you and your firm's efforts on behalf of the court. You've performed your responsibilities admirably.
judges: Srinivasan, Silberman, Sentelle